IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The State of South Carolina, ) | |
| ) | C/A No.: 3:11-cv-00731-JFA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| AU Optronics Corp. and AU Optronics ) | |
| Corp. Am., ) | JUDGE JOSEPH F. ANDERSON, JR. |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Plaintiff the State of South Carolina's ("the State") Motion to Remand. In the motion, the State asks this Court to remand this case to state court because the parties are not diverse under the Class Action Fairness Act ("CAFA"). Defendants AU Optronics Corp. and AU Optronics Corp. Am. (collectively "AU") oppose the State's motion for remand, claiming that this case qualifies as a "mass action" under CAFA and, thus, that this Court has jurisdiction. After considering the parties' briefs and the arguments made at a hearing on this motion, this Court finds that remand is appropriate and hereby grants the State's motion and remands this case to state court.

I.  **Factual and Procedural History**

   A.  **The Instant Case Between the State of South Carolina and AU**

   On February 18, 2011, the State of South Carolina, through its Attorney General Alan Wilson, filed a complaint in the Richland County Court of Common Pleas against AU. The complaint alleges that AU engaged in a conspiracy from 1996-2006 to fix prices for thin film transistor liquid crystal display ("TFT-LCD") panels. The State seeks the following recovery from the defendants: civil forfeitures under S.C. Code Ann. §39-3-180 for violations of the South Carolina Antitrust Act, S.C. Code Ann. § 39-3-130; restitution pursuant to S.C. Code Ann.

1

§ 39-5-50 on behalf of the citizens of the State of South Carolina for the ascertainable loss occasioned by the violations of the defendants; and statutory penalties under S.C. Code Ann. § 39-5-110 for violations of S.C. Code Ann. § 39-5-20, known as the South Carolina Unfair Trade Practices Act ("SCUTPA").  On March 25, 2011, the defendants removed this case to the District of South Carolina, asserting that removal was proper on the following grounds:  the action is a "class action" removable under CAFA, 28 U.S.C. §§ 1332(d) and 1453; the action is, in the alternative, a "mass action" removable under CAFA, 28 U.S.C. §§ 1332(d) and 1453; the action is removable on principles of traditional diversity jurisdiction, 28 U.S.C. § 1332; and supplemental jurisdiction, 28 U.S.C. § 1367, exists over the remainder of the State's claims.

The State now seeks remand of these actions to the Richland County Court of Common Pleas, claiming that diversity does not exist under either the traditional diversity framework or under the minimum diversity requirements of CAFA.  The State further contests federal jurisdiction under CAFA, asserting that neither case meets the additional requirements of CAFA. As such, the State claims that this Court lacks subject-matter jurisdiction over these cases.

**B.     Similar Cases Brought by Other States**

Since December 2006, a number of other states' attorneys general and private plaintiffs have filed actions based on the same alleged conduct in federal and state courts around the country.  Many of those cases have been transferred to a multidistrict litigation pending in the Northern District of California, <u>In re TFT-LCD (Flat Panel) Antitrust Litigation</u>, MDL No. 3:07-md-01827-SI ("MDL").  In contrast to the present case where the State Attorney General has asserted only state law claims, most of the actions filed by state attorneys general that have been consolidated in the MDL include both state and federal claims (primarily federal antitrust claims) against AU.  <u>See</u> Compl. for Damages, Civil Penalties, Injunctive and Other Relief 5, ECF No. 1, filed in <u>State of Missouri et al. v. AU Optronics Corp., et al.</u>, Case No. 3:10-cv-03619-SI.  As

such, in those cases the states themselves have alleged that federal subject matter jurisdiction exists under the federal antitrust statutes, and the issue of CAFA "mass action" jurisdiction has not been raised by either the parties or the court. Id.

However, other cases similar to the one before this Court have been filed by states' attorneys general that assert only state law claims against the TFT-LCD Defendants, and all of these cases, thus far, have been remanded to their respective state courts. See Order Remanding State of Washington v. AU Optronics Corp., to King County Superior Court; And Remanding The People of the State of California v. AU Optronics Corporation, to the Superior Court for the county of San Francisco, ECF No. 2456, In re TFT-LCD (Flat Panel) Antitrust Litigation, MDL No. 3:07-md-01827-SI (Feb. 15, 2011). For example, the State of Washington and the State of California, through their respective attorneys general, filed similar cases seeking damages from TFT-LCD defendants on behalf of their state agencies and on behalf of consumers. Both cases were removed by the defendants and were consolidated with the other MDL cases. The States sought remand, and the district court granted remand in both cases, finding that subject matter jurisdiction was lacking because the States were the real parties in interest and because the lawsuits did not qualify as either "class actions" or "mass actions" under CAFA. In another case related to the MDL proceedings, the Northern District of Illinois remanded a case brought by the State of Illinois against various TFT-LCD defendants where the State of Illinois sought civil penalties, injunctive relief, declaratory relief, and damages under Illinois state law. Although this Court is not bound by the decisions in the Northern District of California and in the Northern District of Illinois, the decisions of these courts are persuasive. Both decisions are further discussed below.

## II. Legal Standard

In general, an action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Courts should strictly construe removal jurisdiction because of the implications of federalism. Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)). "If federal jurisdiction is doubtful, a remand [to state court] is necessary." Id. "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Id. (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). However, once a defendant has established that the general requirements of CAFA have been met, the burden shifts to the plaintiff to establish, by a preponderance of the evidence, an exception to jurisdiction under CAFA applies. Bowen v. Houser, 2011 WL 380455 (D.S.C. February 3, 2011).

CAFA was enacted in 2005 to expand federal jurisdiction for class actions removed to federal court, and it creates special rules governing removal of class actions. For example, CAFA requires minimal diversity of citizenship among parties to the action. 28 U.S.C. § 1332(d)(2). As such, for covered class actions, CAFA abdicates the complete diversity rule that generally applies in federal diversity cases. See Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 680, 684 (9th Cir. 2006). Second, an action removable under CAFA must satisfy the statute's definition of a "class action" or a "mass action." CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §1332(d)(1)(B). CAFA defines a "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that

4

jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1332(d)(11)(B)(i).

**III.     Analysis**

Plaintiff's motion to remand presents three issues: (1) whether this case satisfies the minimal diversity requirement necessary to create federal subject matter jurisdiction under CAFA, (2) whether the case constitutes a "class action" under CAFA, and (3) whether the case constitutes a "mass action" under CAFA.

> **A.     Whether Minimal Diversity Exists Between the Parties so as to Establish Jurisdiction in this Court Under CAFA**

In order to satisfy the minimal diversity requirement of CAFA, any member of the plaintiff class may be diverse from any defendant. 28 U.S.C. § 1332(d)(2)(A). Here, defendants AU Optronics and AU Optronics America are citizens of Taiwan and California, respectively; however, the single plaintiff of the instant action is the State of South Carolina, and it is well-established "that a State is not a 'citizen' for purposes of [] diversity jurisdiction." Moor v. Alameda County, 411 U.S. 693, 717 (1973). As such, even minimal diversity cannot exist between the named parties in this case. This is the reasoning behind the State's Motion to Remand. However, Defendants ask this Court to find that the citizens of South Carolina, not the State, are the real parties in interest for the State's restitution claim and, thus, that minimal diversity exists in this matter between the real parties in interest.

As established by the Supreme Court, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980). Therefore, if a court determines on the basis of the complaint that the named plaintiff is merely a nominal party, then the court should look past the complaint to determine if any unnamed plaintiffs are the real parties in interest. See id. Here,

5

the State of South Carolina's complaint is framed as a *parens patriae* suit, but "if the State is only a nominal party without a real interest of its own—then it will not have standing under the *parens patriae* doctrine." Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez, 458 U.S. 592, 600 (1982). In order to be a real party in interest in a *parens patriae* suit, "the State must articulate an interest apart from the interests of particular private parties . . . . The State must express a quasi-sovereign interest." Id. at 607. Though the term quasi-sovereign interest is difficult to give an exact definition to, it does include a State's "interest in the health and well-being—both physical and economic—of its residents in general." Id. A State that brings a suit in which it asserts not a quasi-sovereign interest but exclusively the private interests of a small subset of the State's population is not a real party in interest; rather, it is only a nominal party. Id. at 601–02. The Supreme Court has distinguished states' quasi-sovereign interests from their interests in bringing cases on behalf of private parties, stating

> [A] State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party.

Id. In cases where a State is merely a nominal party, it is appropriate to look past the parties named in the complaint to determine the real parties in interest. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980).

In the present case, the State is seeking civil forfeitures and statutory penalties, both of which may clearly be pursued under its *parens patriae* power, in addition to restitution on behalf of a particular subset of South Carolina citizens. The Defendants encourage this Court to follow the rule adopted in the Fifth Circuit and followed by a district court in the Third Circuit, urging

6

this Court to first look at the State's case on a claim-by-claim basis rather than at the case as a whole and, second, to look beyond the single named plaintiff of the case to find that the real parties in interest are the consumers of South Carolina. See Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 423-25 (5th Cir. 2008); West Virginia ex rel. McGraw v. Comcast, 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010). According to the Defendants, it is consistent with CAFA and a minimal diversity analysis to look at each of the claims in the complaint separately rather than looking at the complaint as a whole when determining who the real party in interest is. As support for their assertion, Defendants cite the definition of "mass action" set forth in CAFA, which provides that "the term 'mass action' means any civil action . . . *in which* monetary relief claims of 100 or more persons are proposed to be tried jointly . . . ." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). The Defendants point out that CAFA does not say that the action must be limited to the claims of these persons—it only requires that the action include those claims.

      The other courts that have taken the claim-by-claim approach endorsed by the Defendants have found federal jurisdiction over the whole case because unnamed plaintiffs on whose behalf a State asserts damages are minimally diverse from the defendant under CAFA. For example, the Fifth Circuit approved the use of a claim-by-claim approach in a case where the State of Louisiana brought an action seeking forfeiture of illegal profits, treble damages, and injunctive relief under its own antitrust statutes. Caldwell, 536 F.3d at 423-25. In Caldwell, the lower court was actually the one that pierced the complaint and used a claim-by-claim analysis, and the Fifth Circuit refused to question that decision because the State of Louisiana waived the issue by failing to argue it, but the court did "recognize[] that 'defendants may pierce the pleadings to show that the . . . . claim has been fraudulently pleaded to prevent removal." Id. at 424–25. The Fifth Circuit identified the central issue as whether the citizens on whose behalf the State of

Louisiana brought the lawsuit were the real parties in interest and then stated, "[w]e have no reason to believe that they are not, especially given that the purpose of antitrust treble damages provisions are to encourage private lawsuits by aggrieved individuals for injuries to their businesses or property." Id. at 430.  Accordingly, the Fifth Circuit found that CAFA-required minimal diversity existed between the real parties in interest and that the case was properly removed as a mass action. Id. at 430.

In another case a court in the Eastern District of Pennsylvania decided to follow the Fifth Circuit's Caldwell decision, but the court provided an in depth discussion of whether it was more appropriate to "frame the relief the state seeks at a wholesale level or on a claim-by-claim basis" where a State was seeking treble damages on behalf of some of its consumers in addition to other relief. West Virginia ex rel. McGraw v. Comcast, 705 F. Supp. 2d 441, 447 (2010).  The court noted that other courts' decision on whether to use a claim-by-claim or a wholesale approach has had a correlation to whether a State is found to be a real party in interest or not. Id. ("Courts that have adopted the claim-by-claim approach . . . have found that treble and compensatory damages primarily benefit private individuals, which means that the state has no quasi-sovereign interest for such claims."). In Comcast, the court ultimately concluded that a claim-by-claim approach was appropriate because "CAFA was intended to expand federal jurisdiction over class actions, which suggests that courts should carefully examine actions removed under CAFA to ensure that legitimate removal requests are not thwarted by jurisdictional gamesmanship." Id.  The court further explained that "[t]he claim-by-claim approach does a better job of unearthing a state's real interest in a suit because, unlike the wholesale approach, it does not blur the lines between those claims for which a state has a well-recognized interest, and those claims for which a state's interest is negligible." Id. at 449.  Using the claim-by-claim approach, the court determined that

8

the citizens on whose behalf West Virginia was bringing the suit were the real parties in interest, and, therefore, CAFA's minimal diversity requirement was met. Id. at 450.

Plaintiff, on the other hand, urges this Court to examine the State's interest in this suit as a whole in determining the real party in interest for the restitution claim, referencing cases that have used such an approach from the Supreme Court and from other district courts. See, e.g., Ex parte Nebraska, 209 U.S. 436, 444–45 (1908); Illinois v. SDS W. Corp., 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009) (acknowledging that although a few courts have divided complaints according to the relief sought in deciding real party in interest issues, "[m]ost have rejected [that approach] and viewed the complaint as a whole"); Hood ex rel. Mississippi v. Microsoft Corp., 428 F. Supp. 2d 537, 545 – 46 (S.D. Miss. 2006); New York ex rel. Abrams v. Gen. Motors Corp., 547 F. Supp. 703, 706–07 (S.D.N.Y. 1982).  Of course, other courts considering substantially the same issue before this Court regarding claims brought by other states' attorneys general have also decided that a wholesale approach is appropriate in evaluating whether minimal diversity exists. See Illinois v. AU Optronics Corp., --- F. Supp. 2d ---, 2011 WL 2214034 (N.D. Ill. 2011) ("[T]he Court respectfully rejects Defendants' arguments and concludes that it should look to the complaint as a whole."); In re TFT-LCD (Flat Panel) Antitrust Litigation, No. 07-1827 (N.D. Cal. Feb. 15, 2011) ("The Court is unpersuaded by defendants' argument that simply because CAFA was intended to broaden federal jurisdiction over class actions, federal courts are required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State is a real part in interest in a *parens patriae* case.").

This Court is inclined to agree with the argument of the Plaintiff—namely, that the case should be examined as a whole rather than on a claim-by-claim basis. Under a wholesale approach, the case is a *parens patriae* action, where the State has a clear quasi-sovereign interest in enforcing its own antitrust and consumer protection laws. Based on this recognized quasi-

sovereign interest, the State is a real party in interest to the action, and there is no need to pierce the pleadings. As such, minimal diversity does not exist.

Even were this Court to adopt the case-by-case approach proffered by the Defendants, the State would still be a real party in interest to the restitution claim, and minimal diversity would still be lacking in the instant case. Again, a state's status as a real party in interest in a *parens patriae* suit hinges on whether it has a quasi-sovereign interest. As discussed above, the State has articulated a clear quasi-sovereign interest by bringing suit against the Defendants to enforce its own antitrust and consumer laws, but even the State's claim seeking wide-ranging relief on behalf of its citizens from the alleged price-fixing qualifies as a quasi-sovereign interest. As pointed out by Defendants, the Fourth Circuit has stated that "'[n]o state has a legitimate quasi-sovereign interest in seeing that consumers or any other group of persons receive a given sum of money.'" Pennsylvania v. Mid-Atlantic Toyota Distributors, Inc., 704 F.2d 125, 129 n. 8 (1983). However, the Fourth Circuit has also recognized a quasi-sovereign interest of a State in bringing an action to enforce its laws, disgorge the proceeds of ill-gotten gains, and refund them to its citizens. In re Edmond, 934 F.2d 1304, 1312 (1991) ("The Division acted, not as a class representative, but on behalf of the state's quasi-sovereign interest in ensuring consumer protection and in securing its borders against violations."). Indeed, the Fourth Circuit's language in Mid-Atlantic admits that "a state can have a legitimate public interest in ensuring the economic well-being of its citizens—and in indirectly promoting a smoothly functioning economy freed of antitrust violations—even though the most obvious beneficiaries may be individual consumers who ultimately recoup money damages." 704 F.2d at 132. This language intimates that it is possible for a State to have multiple interests in a case, including some that are quasi-sovereign and some that are not. While individual consumers may benefit from the restitution sought by the State in this case, the remedies sought in this case also generally inure to

all residents of South Carolina by making it less likely these defendants will engage in future price-fixing and by recovering taxpayer money paid to the defendants as overcharges. Further bolstering this Court's finding that the State has a quasi-sovereign interest in pursuing its restitution claim under SCUTPA, the South Carolina Court of Appeals has interpreted the language of the Act to require that suits brought under the Act address more than just a private interest. "To be actionable under the UTPA, [] the unfair or deceptive act or practice in the conduct of trade or commerce must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected." Noack Enter., Inc. v. Country Corner Interiors, 290 S.C. 475, 479 (1986). This Court is unconvinced by AU's contention that the State is not a real party in interest to its restitution claim—though the claim has been brought on behalf of South Carolina consumers, the State has a quasi-sovereign interest in pursuing the claim.

    **B.**    **Whether the Action is a "Class Action" as Defined in CAFA**

Although initially raised in the Defendants Notice of Removal, Defendants have conceded since that time that the Fourth Circuit's recent decision in West Virginia ex rel. McGraw v. CVS Pharmacy, Inc. binds this Court as to whether this case is removable as a CAFA "class action." 646 F.3d 169 (2011). In accordance with CVS, this case cannot be properly removed as a CAFA "class action" because it "was brought by the State under state statutes that are not 'similar' to Federal Rule of Civil Procedure 23, . . . [and therefore] it is not removable under CAFA as a class action." Id. at 172.

    **C.**    **Whether the Action is a "Mass Action" as Defined in CAFA**

CAFA provides that "mass actions" are removable to federal court. 28 U.S.C. § 1332(d)(11)(A). As defined in CAFA, a mass action is

11

> Any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common question of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional requirements under subsection (a) ['where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs'].

28 U.S.C. § 1332(d)(11)(B)(i) & § 1332(a).

The State argues that the mass action provisions of CAFA do not confer jurisdiction here for three reasons. First, Plaintiff states that this case does not satisfy CAFA's numerosity requirement. 28 U.S.C. § 1332(d)(11)(B)(i). Second, Plaintiff argues that the Defendants have not satisfied their burden of showing that any of the South Carolina residents' claims meet the $75,000 requirement to stay in federal court. See id. at §§ 1332(a) & 1332(d)(11)(B)(i). Third, Plaintiff argues that this case fits within the carve-out in CAFA for lawsuits brought on behalf of the general public, which CAFA excludes from the definition of "mass action." See id. at § 1332(d)(11)(B)(ii)(III).

This Court concludes that, for the same reasons that it found the State to be a real party in interest, this suit does not constitute a "mass action" under CAFA. Because the State is a real party in interest, the minimal diversity required for mass actions under CAFA does not exist. See 28 U.S.C. § 1332(a). Absent minimal diversity, this Court does not have subject matter jurisdiction over the instant action. Furthermore, this Court finds that as the real party in interest, the State does not satisfy the numerosity requirement for mass actions under CAFA. See Tanoh v. Dow Chem. Co., 561 F.3d 945, 952–53 (9th Cir. 2009) (holding that CAFA's requirement of 100 or more plaintiffs refers only to actual, named plaintiffs); Cal. Pub. Employees Ret. Sys. v. Moody's Corp., 2009 WL 3809816 at *7 (N.D. Cal. 2009) (interpreting the mass action

provisions of CAFA as requiring plaintiffs to appear and make claims in order to count toward the numerosity requirement, and refusing to count 490 unnamed plaintiffs represented by an unincorporated association who failed to do so toward the numerosity requirements); <u>Kitazado v. Black Diamond Hospitality Inv., LLC</u>, No. 09-00271, 2009 WL 3209298, at *6 (D. Haw. Oct. 6, 2009). As another court recently summarized in words that apply equally here, "[b]ecause the State is a real party in interest and sues to protect and vindicate the rights of the public in general [under the SCUTPA], this action is not a 'mass action.'" <u>Connecticut v. Moody's Corp.</u>, No. 3:10cv546, 2011 WL 63905, at *4 (D. Conn. Jan. 5, 2011).

**IV.     Conclusion**

Accordingly, the action is remanded to the Richland County Court of Common Pleas. A certified copy of this order of remand shall be sent by the Clerk of this Court to the Clerk of the Court of Common Pleas, Richland County, Fifth Judicial Circuit of South Carolina.

IT IS SO ORDERED.

September 14, 2011                                 Joseph F. Anderson, Jr.
Columbia, South Carolina                           United States District Judge